**167 P.2d 390**

**GUSHEROSKI et ux. v. LEWIS et ux.**

**No. 4811.**

Supreme Court of Arizona.

April 2, 1946.

H. M. Van Denburgh and Kramer, Morrison, Roche & Perry, all of Phoenix, for appellants.

Hess Seaman, of Phoenix, for appellees.

STANFORD, Chief Justice.

Appellants were the owners of Tract F consisting approximately of five acres and

appellees were the owners of Tract G being of similar size. The land lay side by side, the appellants' property being north of appellees' five acres. The lands are on North Central Avenue, North of Phoenix near the Arizona Canal. Complaint was filed in the superior court by appellees alleging a controversy between the two owners over a strip of land lying between the two tracts and asking for a restraining order, temporary and permanent, preventing appellants from interfering with appellees or their employees while going upon the land to cultivate and irrigate same, and for a declaration of an easement. There is a vacant piece of land between the two tracts, but there is no boundary line or fence maintained between the two tracts and in the cultivation of the north row of citrus on Tract G, belonging to the appellees, they had for over ten years past driven their cultivating equipment on the southern portion of Tract F. This has been done in connection with both cultivation and irrigation of the north row of citrus owned by appellees.

A survey of Tract F established that the recorded plat was substantially correct. The strip over which appellees were given perpetual easement in Tract F is a wedge shaped piece of land approximately one foot in width at one end and seven feet at the other and about one quarter mile in length. The evidence further disclosed that it was impossible for each of the parties to cultivate their trees without encroaching on each other's property at the time the machinery was turned around. It was also made to appear that appellees and their predecessors in interest, during a period in excess of 29 years, and during a period in excess of 17½ years of actual ownership by the appellee Adah I. Lewis, have been cultivating, using and enjoying the disputed ground continuously, openly, notoriously and without interruption, either verbal or physical, under claim of right inconsistent with and hostile to the claim of all others. While no fence existed between the properties, after each cultivation a ridge or embankment was constructed and reconstructed all through the years, keeping appellees' irrigation water off of appellants' land, and appellants' irrigation water off of appellees' ground; and when appellants' predecessors in interest cultivated and irrigated the area south of their south row of trees and in such cultivation and irrigation broke down said ridge or embankment, they, in turn, reconstructed same, it being accepted and acquiesced in by all parties in interest during all of said time that each owner had the right to so destroy and reconstruct said embankment between said two tracts of land for the necessary and proper cultivation of their respective tracts of land.

The appellee Mrs. Lewis (formerly Mrs. Zimmer) testified that she and Mr. Zimmer bought their tract of land in 1927; that they looked at the tract G in 1926 prior to purchase from a Mr. Nelson and

his wife, then the owners. She testified that the following conversation occurred while looking over the land:

"A. Well, I said to Mr. Nelson, 'Where is the boundary line of this property here. If we buy it what would our boundary line be?' He says, well, he says, 'It is right straight through between these two rows of trees. It runs that halfway between the two rows of trees. It has always been considered halfway between the two rows of trees.'

"Q. And you and Mr. Zimmer always claimed that to be your property line? A. Yes, sir.

"Q. No one ever disputed it up until the present time? A. Never."

Mrs. Lewis further testified:

"Q. * * * Now, from the time you purchased that property did you cultivate it right up to the present time? A. We certainly did.

"Q. And what was necessary to be done in order to cultivate that property? A. Well, when you come north across, why, you got up to this, where the ground there is in condition now, you have to turn around because we could not go on the other man's place and turn in, and we turned on that road there and cultivate, use their ground, cultivate their ground, why, they turned on that ground there that belonged to us too, just the same.

"Q. In other words, as the machines traveled from the south to the north to your last row of trees it was necessary to go out into this area of land that is now in contention? A. Yes, sir.

"Q. And turn around? A. Yes."

The court's judgment subjected each of the tracts to an easement in favor of each in so far as it was necessary to encroach on each tract for the purpose of effecting the cultivation as had been established by the use.

From this judgment the appellants have appealed and have assigned the following as error:

"The trial court erred in granting appellees an easement by prescription over appellant's land, because such easement is not warranted as a matter of law. Taking the facts to be as contended by appellees, the judgment here challenged is contrary to law. There is no evidence of any 'hostile' possession of use by appellees or their predecessors in interest prior to July, 1944."

Sections 29-103 and 29-107, A.C.A.1939 are the sections of our code involved in this action. We quote from each:

"29-103. Ten-year limitation—Extent of possession.—Any person having a right of action for recovery of any lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using and enjoying the same, shall institute his action therefor within ten (10) years next after his cause of action has accrued, and not afterward. * * *"

"29-107. Terms defined.—* * *

" 'Adverse possession,' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

These cases are submitted by appellants supporting their claims: Mosher v. Arizona Packing Co., 25 Ariz. 473, 219 P. 232; Spillsbury v. School Dist. No. 19, 37 Ariz. 43, 288 P. 1027; Ferguson v. Standley, 89 Mont. 489, 300 P. 245; Pacific Gas & Electric Co. v. Crockett Land & Cattle Co., 70 Cal.App. 283, 233 P. 370; Lyons v. Schwartz, 40 Cal.App.2d 60, 104 P.2d 383.

From the case of Mosher v. Arizona Packing Co., supra, we quote [25 Ariz. 473, 219 P. 233]:

"It would serve no useful purpose to enter into a discussion of the evidence. It is sufficient to say that there is no substantial evidence indicating that the possession of John Botot was adverse. The evidence does not show that his possession was under any claim of right inconsistent with and hostile to the claim of any one of the several parties who at different times held the paper title. On the contrary, the evidence is very plain that the possession of John Botot was without any claim of right, and that he never claimed any interest in the land until shortly before the commencement of this action. Possession without some pretense or claim of right is not adverse."

The following paragraph is taken from Spillsbury v. School Dist. No. 19, supra [37 Ariz. 43, 288 P. 1028]:

"Under our statute, adverse possession is 'an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.' Section 2055, Revised Code of 1928 (Section 29-107, A.C.A.1939). It is contended by defendants, however, that the original occupancy of the premises was under a conditional oral permit from the original owner, and that under such circumstances adverse possession does not begin to run against the true owner, unless there is a positive disclaimer and disavowal of the owner's title, and the assertion by the occupant of a title in hostility thereto, notice of which is brought home to the land owner. This is undoubtedly true as a matter of law. * * *"

Appellants maintain that the testimony of witnesses show that no claim of right inconsistent with and hostile to them has ever been made.

Section 29-107, supra, further reads:

"Terms defined.—'Peaceable possession,' within the meaning of this chapter is such as is continuous, and not interrupted by an adverse action to recover the estate;

* * * * * *

" 'Peaceable and adverse possession' need not be continued in the same person, but when held by different persons successively

there must be a privity of estate between them;

" 'Real property,' as used herein, included mines and mining claims."

The cases of Curtis v. Southern Pac. Co., 39 Ariz. 570, 8 P.2d 1078; Boyd v. Atchison, etc., Ry. Co., 39 Ariz. 154, 4 P.2d 670, are authorities for the rule that the time fixed by the statute of limitation fixes the time for acquiring by prescription an easement of use.

Our case of Conness v. Pacific Coast Joint Stock Land Bank of San Francisco, 46 Ariz. 338, 50 P.2d 888, 889, is where an appeal was taken enjoining the defendant Conness and others from interfering with plaintiffs' use of a certain strip of land belonging to defendant as a right of way for an irrigation ditch. The trial court gave judgment for plaintiff and defendants appealed. Plaintiff claimed a right of way for a certain ditch by prescription under the provisions of our then Section 2051, R.C.S.1928, now Section 29-103, A.C.A.1939. Defendants contended that plaintiff and its predecessors had not been in peaceable and adverse possession of the land for the ten years required by the statute and based their claim on a verbal notice or protest that J. W. Conness gave. The court said:

"The question of law for us, then, is whether or not peaceable possession can be interrupted by a mere verbal protest which does not proceed any further. * *"

This court in that opinion mentioned that there was a sharp conflict on this subject and cited many cases, but later stated:

"* * * After a careful examination and consideration of the foregoing cases, we are of the opinion that the rule contended for by plaintiff is the soundest.

*　　*　　*　　*　　*　　*

"We think it clear that under our statute, unless a possession is physically interrupted so that it cannot be held to be continuous, or else an adverse action is brought to recover the estate, it is peaceable possession within the meaning of section 2051, supra. * * *"

We again quote from appellant's assignment of error "There is no evidence of any 'hostile' possession of use by appellees or their predecessors in interest prior to July, 1944". Black's Law Dictionary defines "hostile possession" as follows:

"This term, as applied to an occupant of real estate holding adversely, is not construed as implying actual enmity or ill will, but merely means that he claims to hold the possession in the character of an owner, and therefore denies all validity to claims set up by any and all other persons. Ballard v. Hansen, 33 Neb. 861, 51 N.W. 295; Griffin v. Mulley, 167 Pa. 339, 31 A. 664."

Also from the case of Mittet v. Hansen, 178 Wash. 541, 35 P.2d 93, 95, we quote:

"In the Pacific Power & Light Co. case, supra [Pacific Power & Light Co. v.

Bailey, 160 Wash. 663, 295 P. 943], we took occasion to approve a text from 2 C. J. 122, to the effect that the term 'hostile,' as used in such cases, does not import enmity or ill will, but rather imports that the claimant is in possession as owner, in contradistinction to holding in recognition of or subordination to the true owner. This answers a contention of appellant that the possession of respondent of the disputed strip for longer than the ten-year period was permissive only, and not hostile or adverse."

■ We believe that the law applicable to the facts in the instant situation is amply set forth in the case of Glantz v. Gabel, 66 Mont. 134, 212 P. 858, 860. In this case it is declared that:

"* * * Where the claimant has shown an open, visible, continuous, and unmolested use of the land of another for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right, and not by license of the owner. In order to overcome this presumption, thereby saving his title from the incumbrance of an easement, the burden is upon the owner to show that the use was permissive. * * * When the claimant's use has thus been open, visible, continuous, unmolested, and under a claim of right, the corollary is that it has been adverse to the owner."

Cases of like effect are Alexander v. Schleicher County, Tex.Civ.App., 291 S. W. 263, Hughes v. Boyer, 5 Wash.2d 81, 104 P.2d 760. We also desire to direct attention to the holding in Wallace v. Whitmore, 47 Cal.App.2d 369, 117 P.2d 926. In this case the testimony showed defendant and her predecessors in title used private roadway across plaintiffs' land frequently for twenty-five years for hauling and for driving sheep and cattle to public road, that roadway was clearly visible and followed course described without material variation during all of the period, and that it was so used without interference, opposition, or protest by plaintiffs or their predecessors in title, plaintiffs and their predecessors were charged with knowledge of manner in which roadway was used, and in absence of evidence to the contrary that testimony furnished adequate proof that roadway was used with a claim of right and was not merely permissive. That court further held that clear and satisfactory evidence of the use of a private roadway for more than the statutory period, openly, notoriously, visibly, continuously and without protest, opposition or denial of right to do so, raised a presumption that such roadway was used with an adverse claim of right and creates a prima facie title to the easement by prescription, and in the absence of evidence that the use was permissive, such evidence was sufficient to sustain a judgment quieting title to the easement.

■ In the instant case appellees and their predecessors in interest for many years exceeding the statutory period had gone upon the lands of appellants and

committed many acts inimical to any asserted claim of exclusive possession and domination. Their conduct in this behalf had been open, visible, continuous and unmolested. In this situation it will be presumed that their use was under a claim of right and not by license of the owner. In this fact situation the legal presumption is that the use was adverse.

Accordingly the judgment is affirmed.

LA PRADE and MORGAN, JJ., concur.